SO ORDERED.

Dated: September 9, 2014

Eddward P. Ballinger Jr., Bankruptcy Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

MINUTE ENTRY/ORDER

FOR MATTER TAKEN UNDER ADVISEMENT

| | |
|---|---|
| Bankruptcy Judge: | Eddward P. Ballinger, Jr. |
| Case Name: | Cam Trucking LLC  -  Chapter 11 |
| Case Number: | 2:14-bk-09404-EPB |
| Subject of Matter: | Lien Priority |
| Date Matter Taken Under Advisement: | August 21, 2014 |
| Date Matter Ruled Upon: | September 9, 2014 |

The issue before the Court is whether Transwest Truck Trailer RV's ("Transwest") garagemen's liens are senior to Auto Title Loans USA, LLC's ("ATLU") consensual, purchase money lien.

The relevant facts are undisputed.[1]  ATLU is the holder of a purchase money Note and Security Agreement dated January 24, 2014, granting it a security interest in a variety of Debtor Cam Trucking, LLC's motor vehicles.  Three of these motor vehicles are also subject to

---

[1] Transwest does demand proof of ATLU's perfected security interest.  *See* Transwest's Objection to American Title Loans USA, LLC's Motion to Determine Lien Priorities, fn. 3.  However, because ATLU has not provided a copy of its note or security agreement, this decision will become effective only upon ATLU submitting such documentation within ten days of docket entry of this decision to this Court and Transwest, establishing that it has a properly perfected security interest in the three vehicles at issue.

1

garagemen's liens in favor of Transwest for repairs performed in mid-2014. ATLU's security interest arose prior to Transwest's garagemen's liens.

The essential dispute between ATLU and Transwest is what law applies -- Arizona law where the motor vehicles were titled, or Colorado law where Transwest performed the repairs. In reviewing this question, the Court concludes that under either Colorado or Arizona law, Transwest's garagemen's liens do not prime ATLU's security interest.

Arizona's and Colorado's statutory schemes regarding garagemen's liens and their priorities over other security interests are substantively identical, albeit written and organized somewhat differently. First, both Arizona and Colorado allow for garagemen's liens. Colorado Revised Statute ("C.R.S.") section 38-20-106 provides as follows[2]:

> Any mechanic or other person who makes, alters, repairs, or bestows labor upon any article of personal property, at the request of the owner of such personal property or his agent shall have a lien upon such property for the amount due for such labor done or material furnished and for all costs incurred in enforcing such lien.

Arizona similarly allows for garagemen's liens pursuant to Arizona Revised Statute ("A.R.S.") section 33-1022(A):

> (A) Proprietors of garages and repair and service stations shall have a lien upon motor vehicles of every kind . . . for labor, materials, supplies and storage for the amount of the charges.
>
> (B) The lien shall not impair any other lien or conditional sale of record at the time the labor, materials, supplies and storage were commenced to be furnished, unless furnished with the knowledge and consent of the record lienor or vendor.

---

[2] Transwest cites to C.R.S. § 38-20-106 in a footnote, but relies primarily on § 38-21-101 for creation of its garagemen's liens. This reliance is misplaced. Article 21 applies to liens for services and applies to those providing services on personal property and, in particular, dry cleaners and launderers. Section 38-20-106.5, within Article 20, expressly identifies that garagemen's liens are created under 38-20-106: "(1) A motor vehicle repair garage which is entitled to a lien under 38-20-106 for motor vehicle repairs . . . ."

2

Therefore, whether applying Arizona or Colorado law, both states recognize Transwest's possessory lien in the vehicles it repaired.

The next question is whether Transwest's garagemen's liens prime ATLU's previously perfected security interest. Article 9, Title 4 of Colorado's Uniform Commercial Code, generally does not apply to statutory liens such as Transwest's garagemen's liens. However, section 4-9-109(d)(2) provides an exception when determining the priority of statutory liens:

> (d) This article does not apply to:
>
> \* \* \*
>
> (2) A lien, other than an agricultural lien, given by statute or other rule of law for services or materials, *but section 4-9-333 applies with respect to priority of the lien.*

(Emphasis added). Section 4-9-333, in turn, provides that a possessory lien created by statute has priority over a security interest in the goods if the lien is created by a statute that expressly so provides:

> (a) In this section, "possessory lien" means an interest, other than a security interest or an agricultural lien:
>
> (1) Which secures payment or performance of an obligation for services or materials furnished with respect to goods by a person in the ordinary course of the person's business;
>
> (2) Which is created by statute or rule of law in favor of the person; and,
>
> (3) Whose effectiveness depends on the person's possession of the goods.
>
> (b) A possessory lien on goods has priority over a security interest in the goods *if the lien is created by a statute that expressly so provides*.

(Emphasis added). If one assumes, for the moment, that the lien creating Transwest's possessory interest is C.R.S. section 38-20-106, it does not expressly provide for the garagemen's lien to

3

Case 2:14-bk-09404-EPB    Doc 95    Filed 09/09/14    Entered 09/10/14 11:18:04    Desc
Main Document    Page 3 of 8

have priority over the security interest in the goods. Therefore, if ATLU's and Transwest's liens arose solely under Colorado law, ATLU's lien would take priority.

Arizona's statutory scheme is slightly different, but the result is the same. Just as C.R.S. section 4-9-109(d) instructs us to look to its U.C.C. priority provision to determine the priority of statutory possessory liens, A.R.S. section 47-9109(D)(2) does the same:

> (D) This chapter does not apply to:
>
>    \*     \*     \*
>
>  (2) A lien, other than an agricultural lien, given by statute or other rule of law for services or materials, *but § 47-9333 applies with respect to priority of the lien.*

(Emphasis added). Section 47-9333, in turn, is effectively the same as C.R.S. section 4-9-333:

> A. In this section, "possessory lien" means an interest, other than a security interest or an agricultural lien:
>
>  1. That secures payment or performance of an obligation for services or materials furnished with respect to goods by a person in the ordinary course of the person's business;
>
>  2. That is created by statute or rule of law in favor of the person; and,
>
>  3. Whose effectiveness depends on the person's possession of the goods.
>
> B. A possessory lien on goods has priority over a security interest in the goods *unless the lien is created by a statute that expressly provides otherwise*.

(Emphasis added). If one assumes, for the moment, that the lien creating Transwest's possessory interest is A.R.S. section 33-1022(B), it expressly provides that the garagemen's lien shall *not* have priority over the security interest in the goods: "B. The lien shall not impair any other lien . . . of record at the time the labor, materials, supplies and storage were commenced." Therefore, if ATLU's and Transwest's liens arose solely under Arizona law, ATLU's lien would take priority.

4

Case 2:14-bk-09404-EPB   Doc 95   Filed 09/09/14   Entered 09/10/14 11:18:04   Desc
Main Document    Page 4 of 8

The catch in this case is that ATLU's security interest arises under Arizona law (where the loan was executed and title taken) and Transwest's garagemen's lien arises under Colorado law (where Transwest is located, where the vehicles were physically located and where the repair work was performed). As a result, both Transwest and ATLU argue that C.R.S. section 4-9-303 requires this Court to look to Arizona law to determine the priority of Transwest's possessory lien.[3]

> (a) The local law of the jurisdiction under whose certificate of title the goods are covered governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in goods covered by a certificate of title from the time the goods become covered by the certificate of title until the goods cease to be covered by the certificate of title.

According to ATLU, A.R.S. section 47-9333 provides that a possessory lien has priority over a security interest unless the lien is created by a statute that expressly provides otherwise. According to ATLU, the statute creating Transwest's lien is Arizona's garagemen's lien statute A.R.S. section 33-1022 and subsection B "expressly provides otherwise," stating clearly that the lien shall not impair any other prior in time lien. Transwest agrees that A.R.S. section 47-9333 provides for the garagemen's lien to have priority over ATLU's security interest, but argues that the statute *creating* its lien is Colorado's garagemen's lien statute. That statute, C.R.S. section 38-20-106, does not "expressly provide otherwise." It is silent as to the priority of another security interest such that A.R.S. section 47-9333 dictates that the possessory liens take priority. The Court disagrees.

The problem with Transwest's analysis is it ignores the fundamental intent of both Arizona and Colorado law that a garagemen's lien will not generally prime a previously

---

[3] The Court is not convinced that section 4-9-303 does, in fact, apply. C.R.S. section 4-9-109(d) states that Article 9 does not generally apply to statutory liens except to determine priorities under section 4-9-333. For argument's sake and because the Court reaches the same result, however, the Court will analyze the issue as the parties urge.

5

Case 2:14-bk-09404-EPB    Doc 95    Filed 09/09/14    Entered 09/10/14 11:18:04    Desc
Main Document    Page 5 of 8

perfected security interest. Transwest's argument elevates the lucky accident that ATLU's security interest arose under Arizona law and Transwest's possessory lien arose under Colorado law to be the determinative factor as to priority. If the liens had arisen under the law of the same state, Arizona or Colorado, neither state would allow Transwest's possessory interest to take priority over ATLU's security interest. Arizona law expressly forbids garagemen's liens from taking priority over security interests and Colorado law only allows garagemen's liens to take priority over a security interest if expressly allowed. One denies lien priming by the affirmative, and the other denies lien priming by the negative. A side-by-side comparison of the relevant provisions illustrates the point:

| ARIZONA | COLORADO |
|---|---|
| A.R.S. 33-1022 | C.R.S. 38-20-106 |
| A. Proprietors of garages and repair and service stations shall have a lien upon motor vehicles of every kind . . . for labor, materials, supplies and storage for the amount of the charges.<br><br>B. The lien shall not impair any other lien or conditional sale of record at the time the labor, materials, supplies and storage were commenced to be furnished. | Any mechanic or other person who makes, alters, repairs, or bestows labor upon any article of personal property, at the request of the owner of such personal property or his agent shall have a lien upon such property for the amount due for such labor done or material furnished and for all costs incurred in enforcing such lien. |
| A.R.S. 47-933<br><br>B. A possessory lien on goods has priority over a security interest in the goods unless the lien is created by a statute that expressly provides otherwise. | C.R.S. 4-9-333<br><br>(b) A possessory lien on goods has priority over a security interest in the goods if the lien is created by a statute that expressly so provides. |

Transwest's analysis also ignores Colorado case law holding that garagemen's liens do not prime purchase money secured creditors' liens. *See First Sec. Bank of Idaho v. Crouse*, 374 F.2d 17 (10th Cir. 1967); *Denver Motor Fin. Co. v. Stevens*, 128 Colo 531, 265 P.2d 224 (1953). While these cases are "old," as Transwest pointed out at the hearing, and were decided before the

6

Case 2:14-bk-09404-EPB    Doc 95    Filed 09/09/14    Entered 09/10/14 11:18:04    Desc
Main Document    Page 6 of 8

current Colorado statutes at issue here, they are still good law and comport with the underpinnings of the current statutory law. *Crouse* presents facts nearly identical to those here. An auto mechanic in Colorado provided repairs to a Mack truck that broke down while in Colorado. The bank had properly perfected its secured claim under Idaho law, where the loan to purchase the truck was made, prior to any repair work in Colorado. The parties agreed that under Colorado law, the precise source of which was not identified by the court, "the general rule is that a garageman's lien for work done on a vehicle will be subordinated to prior recorded mortgages." 374 F.2d at 18. The court rejected the argument that a "garageman's equitable lien for necessary repairs of ordinary wear and tear would take priority" because the repair work purportedly protects the holder of the recorded lien and, as such, implies consent to the repairs by the secured creditor. *Id*. The court found support for this conclusion in Colorado's recent adoption of the U.C.C.:

> The conclusion that a prior recorded chattel mortgage is superior to a subsequent garageman's lien is also supported by the Colorado legislature's treatment of the problem in its enactment of the Uniform Commercial Code which became effective on July 1, 1966, after the instant facts occurred. As promulgated by the National Conference of Commissioners on Uniform State Laws, the applicable section provides that a repairman's lien takes 'priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise.' The Colorado legislature changed this section so that the Colorado statute, Colorado Revised Statutes, 1963, § 155-9-310, expressly provides that the repairman's lien 'does not take priority over a perfected security interest unless a statute expressly provides otherwise.' This maintains the prior law by giving the repairman an inferior priority status.

*Id.* at 19.

For these reasons,

IT IS HEREBY ORDERED that ATLU's security interest in the three vehicles identified in its motion takes priority over Transwest's garagemen's liens.

7

IT IS FURTHER ORDERED, however, that ATLU is to submit, within ten days of this order, proof of its purchase money Note and Security Agreement dated January 24, 2014.